UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SHANELL L. BENNETT, | Civil Action No.: 16-11884 |
| | Honorable Stephen J. Murphy, III |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

              Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14, 16]**

Plaintiff Shanell L. Bennett appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is not supported by substantial evidence, and thus **RECOMMENDS** that:

- the Bennett's motion [ECF No. 14] be **GRANTED**;

- the Commissioner's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Bennett's Background and Disability Applications

Born August 28, 1975, Bennett was 38 years old when she submitted her applications for disability benefits in September 2013. [ECF No. 12-5, Tr. 140]. She had a high school education and listed her work history as including cashier/stock clerk, housekeeping, receptionist/desk clerk, and telemarketer. [ECF No. 12-6, Tr. 170, 172]. Bennett alleges a disability onset date of June 29, 2012, and that she is disabled by chronic asthma, depression, fibromyalgia, and rheumatoid arthritis (RA). [ECF No. 12-6, Tr. 165, 169].

After the Commissioner denied both disability applications initially, Bennett requested a hearing, which took place on January 21, 2014, and during which she and a vocational expert (VE) testified. [R. 12-2, Tr. 14, 30-44]. In an April 10, 2015, written decision, the ALJ found Bennett to be not disabled. [*Id.*, Tr. 14-24]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Bennett timely filed for judicial review. [*Id.*, Tr. 1-6; ECF No. 1].

**B. The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Bennett was not disabled. At the first step, he found that Bennett had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 12-2, Tr. 16]. At the second step, he found that Bennett had the severe impairments of "rheumatoid arthritis; fibromyalgia; obesity; along with depression and anxiety." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 17].

Between the third and fourth steps, the ALJ found that Bennett had

4

the RFC to perform light work,[3] except she "can occasionally climb ramps or stairs and balance. She must avoid even moderate exposure to hazards. Her psychological symptoms limit her to simple, routine, tasks." [ECF No. 12-2, Tr. 19]. At step four, the ALJ found that Bennett was capable of performing her past relevant work as a stock clerk, citing the VE's testimony in support. [*Id.*, Tr. 21].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

5

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Bennett argues that the ALJ erred by failing to account for the full range of limitations supported by the medical record, and in making an unsupported credibility determination. The Court finds merit with the first argument, which will necessarily require a reevaluation of Bennett's credibility on remand.

**B.**

The ALJ's decision regarding Bennett's RFC is inconsistent with the record and internally inconsistent, requiring remand. "[T]he court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Ramos v. Astrue*, 674 F.Supp.2d 1076, 1080 (E.D.Wisc.2009)

The record only contains one opinion regarding Bennett's physical impairments, which is that of state agency physician R. H. Digby, M.D., from January 2014. [ECF No. 12-3, Tr. 51-54]. Dr. Digby found that Bennett could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for only four hours in a day, sit for

6

about six hours in a day, and that her ability to push and pull was limited in both lower extremities. [*Id.*, Tr. 52]. He also found that she could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and only occasionally balance, stoop, kneel, crouch, or crawl, and needed to avoid even moderate exposure to hazards such as machinery or heights. [*Id.*, Tr. 52-53]. In justifying these restrictions, Dr. Digby cited Bennett's obesity and other medically determinable impairments, including "RA, plantar fasciitis, and asthma," finding that she "has additional objective findings supportive of restricting tasks." [*Id.*, Tr. 53-54]. Dr. Digby determined that Bennett had a physical RFC for only sedentary work.[4] [*Id.*, Tr. 56].

In summarizing this opinion, the ALJ mistakenly claimed that Dr. Digby found that Bennett could "perform work at the light exertional level with additional postural and environmental limitations," and then rejected Dr. Digby additional limitations by concluding that they were not supported by the medical evidence in the record. [ECF No. 12-2, Tr. 23]. The ALJ found, "the record fails to show objective evidence that would affect the

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) and 416.967(b).

7

claimant's exertional limitations." [*Id.*]. Objecting to the ALJ's rejection of Dr. Digby's opinion, Bennett cites several records containing objective findings supporting the limitations assessed by Dr. Digby.

In July 2013, Bennett visited Rania Othman, M.D., who found that Bennett had "multiple joint pain with manipulation" and "[c]repitus noted in joints" upon examination. [ECF No. 12-7, Tr. 232]. Dr. Othman assessed Bennett with exacerbation of rheumatoid arthritis and referred her to a rheumatologist. [*Id.*]. Dr. Othman saw Bennett again in September 2013, again, finding "multiple joint pain with manipulation" and "[c]repitus noted in joints" upon examination. [*Id.*, Tr. 230]. The next month, Dr. Othman's examination of Bennett revealed tenderness over the bottom of her foot "with palpation mainly in the arch area," though "[b]rief exam of other joints was normal." [*Id.*, Tr. 250]. Bennett was again assessed with rheumatoid arthritis, among other ailments. [*Id.*]. These objective findings were noted by both Dr. Digby and by the ALJ in his summary of the record. [ECF No. 12-2, Tr. 20-21; ECF No. 12-3, Tr. 49].

During the relevant time period, though after Dr. Digby's opinion, rheumatologist Ali Karrar, M.D., conducted musculoskeletal examinations of Bennett and repeatedly made additional objective findings including Heberden's nodes and tenderness to palpation in the finger joints, and

8

crepitation and tenderness to palpations in the knees requiring multiple knee injections. [ECF No. 12-7, Tr. 361-75]. He diagnosed her with fibromyalgia/myalgia, osteoarthritis, rheumatoid arthritis and other rheumatological ailments. [*Id.*].

Thus, contrary to the ALJ's determination, objective evidence in the record did support Dr. Digby's determination that Bennett required exertional limitations. And because Dr. Karrar is a rheumatologist, his findings as they relate to fibromyalgia and rheumatoid arthritis are entitled to heightened consideration. *Rogers*, 486 F.3d at 242-45. Even if the ALJ's assertion were true that "the claimant has only subjective complaints of pain," [ECF No. 12-2, Tr. 23], that would not be enough of a reason for the ALJ to conclude that "nothing in the evidence of record" supports her complaints of pain. [*Id.*]. "[W]e have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. The *Rogers* court emphasized that the objective evidence may have little relevance to the severity of fibromyalgia. *Id.*

Of great concern, the ALJ's decision is also internally inconsistent with regard to whether Bennett suffers from fibromyalgia. The ALJ found

9

Bennett to have fibromyalgia and that it was a severe impairment, and he detailed Dr. Karrar's examinations and treatment Bennett from July 2014 to January 2015, including the fact that Dr. Karrar had found Bennett to have tenderness her fingers and knees. [ECF No. 12-2, Tr. 17, 22]. Yet, the ALJ then contradictorily described Bennett as having alleged a diagnosis of fibromyalgia with no supporting evidence: "At the hearing, the claimant testified that she had a diagnosis of fibromyalgia; however, there are no objective findings, such as tender points shown." [*Id.*, Tr. 23]. This contradictory treatment of Bennett's fibromyalgia diagnosis does not allow for meaningful review.

ALJs are cautioned against interpreting raw medical data beyond their expertise. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726-27 (6th Cir. 2013). Here, the ALJ apparently rejected both the diagnosis of fibromyalgia by a rheumatologist, and the RFC from the state agency consultant—the latter being a highly qualified physician and an expert in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The Court recognizes that an ALJ is not generally required to rely on the opinion of a medical expert in making his disability finding. *Rudd,* 531 F. App'x at 726-27. But here, where the ALJ gave no weight to the only opinion on Bennett's physical impairments,

10

misrepresented that opinion, wrongly stated that there was no objective evidence to support the limitations in that opinion, questionably rejected a rheumatologist's diagnosis of fibromyalgia, and rejected as significant Bennett's subjective complaints despite that diagnosis, the ALJ's decision cannot be said to be supported by substantial evidence.

The Commissioner argues that the ALJ's error, if any, in disregarding Dr. Digby's opinion was harmless because the VE found that someone with Dr. Digby's assessed RFC would still be able to perform jobs that exist in significant numbers in the economy. [ECF No. 16, PageID 475-76]. It is true that the ALJ presented the VE with Dr. Digby's additional exertional limitations, and that the VE found that while Bennett would not be able to return to past relevant work, she would be able to perform other jobs. [ECF No. 12-2, Tr. 41-42]. But this finding was based on the ALJ's erroneous interpretation of Dr. Digby's opinion as allowing for *light* work, when the opinion actually limits Bennett to *sedentary* work. [*Id.*, Tr. 41; ECF No. 12-3, Tr. 56]. No finding was made as to the existence of sedentary work with Dr. Digby's additional limitations in significant numbers in the economy. And even if there is enough evidence in the record to support the ALJ's decision, the decision's failure "to provide an accurate and logical bridge

11

between the evidence and the result" requires remand. *Ramos,* 674 F.Supp.2d at 1080.

## C.

Bennett also contends that the ALJ erred by failing to account for her manipulative limitations by including no limitation on handling or fingering in the RFC. The Court agrees.

As referenced above, rheumatologist Dr. Karrar made objective findings in August 2014, September 2014, and January 2015 of Heberden's nodes[5] over Bennett's distal interphalangeal joints of the index, middle, and ring fingers, and tenderness to palpation over the metacarpophalangeal joint of the index, middle, and ring fingers of both hands. [*Id.*, Tr. 361-71]. Bennett also testified that she could not hold her prior telemarketing job due to pain and cramping in her hands, that she "can't really hold things," "drop[s] things constantly," and has trouble drinking coffee and doing dishes. [ECF No. 12-2, Tr. 39-40]. The ALJ noted Dr. Karrar's findings with respect to Bennett's fingers, but neither accounted for them when assessing her RFC nor provided any explanation for failing to do so. [*Id.*, Tr. 22-23].

---

[5] "Bony bumps on the finger joint closest to the fingernail are called Heberden's nodes." http://www.webmd.com/arthritis/heberdens-and-bouchards-nodes

Defending the ALJ's decision, the Commissioner notes that another physician, Joseph Arnovit, D.O., assessed Bennett during the same timeframe, finding her negative for joint swelling in August 2014 and a normal musculoskeletal exam in January 2015.  [ECF No. 12-7, Tr. 327, 333-34].  However, Dr. Arnovit is not a specialist in this area, and it is unclear whether he specifically examined Bennett's hands and fingers, as he acknowledged that Bennett was seeing Dr. Karrar for rheumatology simultaneously.  [*Id.*].  The Commissioner also argues that the ALJ could rely on Dr. Digby's opinion that Bennett has no manipulative limitations, but this opinion came before Bennett was seen by Dr. Karrar, limiting its usefulness, and the ALJ did not cite that as a reason for excluding manipulative limitations from the RFC.  See *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (ALJ must indicate consideration that non-examining source did not review complete record when relying upon that source's opinion).

The ALJ failed to provide a logical bridge between Dr. Karrar's findings with respect to Bennett's fingers and the assessed RFC with no manipulative limitations, requiring remand. *Ramos,* 674 F.Supp.2d at 1080.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Bennett's motion [ECF No. 14] be **GRANTED**; that the Commissioner's motion [ECF No. 16] be **DENIED**; and the Commissioner's decision be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: July 31, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager